**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL J. VIROSTEK, | ) CASE NO. 1:22-CV-02166-PAB |
| Plaintiff, | ) <br> ) JUDGE PAMELA A. BARKER <br> ) UNITED STATES DISTRICT JUDGE |
| v. | ) <br> ) MAGISTRATE JUDGE |
| WARDEN KENNETH BLACK, | ) CARMEN E. HENDERSON <br> ) |
| Defendant, | ) **REPORT & RECOMMENDATION** <br> ) |

**I.      Introduction**

Michael Virostek ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is an Ohio prisoner who is currently serving a three-year minimum, four-and-a-half-year maximum prison term for substantial impairment rape. (ECF No. 1; ECF No. 12-1 at Ex. 9). Petitioner now asserts fourteen grounds for relief. (ECF No. 1-2). Respondent, Warden Kenneth Black, has moved to dismiss the petition. (ECF No. 12).

This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Virostek's petition and other case-dispositive motions. Because all Petitioner's grounds are either non-cognizable or procedurally defaulted, I recommend that the Court deny his petition in its entirety and not grant him a certificate of appealability.

**II.     Factual Background**

1

The Ohio Court of Appeals for the Eighth Appellate District set forth the following facts[1] on appeal:

{¶ 2} Appellant and the victim in this matter, D.R., were lifelong friends. At the time of the incident, the two spoke or texted nearly daily for the prior several years. They were not dating but would sometimes engage in sexual relations and exchange explicit text messages. D.R. was also close friends with appellant's sister.

{¶ 3} On the afternoon of September 22, 2019, appellant and D.R. were both at D.R.'s house having a few drinks. D.R. had two to three beers and two plastic cups of wine, which were larger than a standard pour in a wine glass.

{¶ 4} Later in the evening, D.R. and appellant went to appellant's sister's house to look for one of D.R.'s flowerpots that had gone missing. D.R. described her state at this point as "loaded," "wasted," and "pretty intoxicated." She located the flowerpot and went inside to use the bathroom when she experienced an episode of vertigo. She became dizzy and laid down on the carpeting in front of the bathroom door to ease the vertigo.

{¶ 5} D.R. has been treated for vertigo by her doctor, Dr. McDonough. Dr. McDonough testified at trial that vertigo is a form of dizziness and causes D.R. to have imbalance, unsteadiness, or a very unsteady feeling. The doctor further testified that alcohol can exacerbate a case of vertigo and, in some patients, can even induce vertigo. Appellant and D.R. both testified that appellant is aware of D.R.'s vertigo and that she gets dizzy from it.

{¶ 6} Dr. McDonough testified that she advised D.R. that when she is having an episode, she could reset her inner ear by lying down and holding her head in different directions for 30 seconds each.

{¶ 7} As D.R. was lying on the floor, appellant appeared and began kissing her neck. D.R. told him "No," but he did not stop and eventually penetrated her without her consent. She felt incapacitated, and her head was spinning.

{¶ 8} When the incident was over, D.R. cleaned up appellant's ejaculate with a tissue. She told appellant to take her home.

{¶ 9} When she got home, D.R. called her friend Antoinette DiPaola, to tell her what had happened. DiPaola stated that D.R. was hysterically crying and unable to talk on the phone. DiPaola repeatedly asked what happened, and D.R. stated that she was raped by appellant.

---

[1] The facts found by the appellate court of record "shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

{¶ 10} DiPaola went to D.R.'s house and found her sobbing and very drunk. She stated that D.R. was very agitated and upset and reeked of alcohol.

{¶ 11} The Mayfield Heights Police Department was called and arrived on scene. As the police officers were asking D.R. what happened, she had to go into the bushes several times because she was dry heaving. Officer Brody Fratantonio stated that D.R. was emotional and upset and that he concluded that she was intoxicated because of her bloodshot eyes, high level of emotions, and inability to even sit down.

{¶ 12} Corporal Joseph Mytrosevich was also present, and he observed D.R.'s demeanor range from emotional, upset, angry, and embarrassed. He believed her to be intoxicated based upon the fact that she was unsteady of her feet, rambling and slurring her words, and her eyes were bloodshot.

{¶ 13} The Mayfield Heights police determined that the incident actually occurred in Lyndhurst, and Lyndhurst police were called to the scene.

{¶ 14} Lyndhurst Police Officer Jonathan Romanin met with D.R. at her home. He stated that she was upset and embarrassed, that he could smell alcohol coming from her person, and that she showed other signs of inebriation.

{¶ 15} D.R. was brought to the Lyndhurst Police Department where she met with Sergeant Mark McConville. He too observed that D.R. was intoxicated, based upon the odor of alcohol on her and her "roller coaster" of emotions.

{¶ 16} Lyndhurst Police Detective Craig Barna also met with D.R. and noted that she was crying, distraught, and intoxicated. He determined that she was intoxicated because of the odor of alcohol and the emotions she was experiencing.

{¶ 17} D.R. also met with Kathryn Tomaro, a community relations liaison and school resource officer for the Lyndhurst Police Department, who has specific training on dealing with victims of sexual assault. She noted that D.R. was very upset and emotional when they met.

{¶ 18} Tomaro took photos of D.R. and accompanied her to the hospital for a Sexual Assault Nurse Examiner ("SANE") examination. While at the hospital, Tomaro heard D.R. slur her words a bit and could tell that she was intoxicated.

{¶ 19} At the hospital, D.R. was treated by Daniele Stoehr, a registered nurse and a SANE trained forensic nurse. D.R. was tearful at times during the SANE examination.

{¶ 20} After the examination, DiPaola returned D.R. to her home around 3:00 a.m. Later that morning, appellant began contacting D.R. via text messages. He sent a

3

number of text messages over the next few days that contained the following statements:

> Hey you upset with me?
>
> I am very sad. I guess our friendship has come to an end. I will leave you alone. I will not contact you. If you ever wanted to talk, you have my number. Hopefully your friendship with my sister continues. I will never throw you under the bus. I will never discuss our business.
>
> I will never discuss our business with Michelle or my mother. I do have to drop off my table saw to [D.R.'s neighbor] tomorrow morning around 9:00. Just so you know. I gave him my word that I would do that. Take care [D.R.]
>
> I want to share my thoughts with you. Because I have become pretty attached to you & your kids the last couple months. It's definitely been a friendship & a little more. I am having a very hard time getting you off my mind. Looking back on Sunday, I should've left & went home. I made a poor choice inviting you to Michelle's.
>
> I should have noticed the condition we were both in. I think I took advantage of the situation. I am so very sorry. I hope you can forgive me. I think I ruined things between us. What keeps going through my mind, is you saying when I was at your house the last couple times was … "Michael, I don't want you to leave." "I feel safe with you." * * *
>
> I feel I betrayed you & your trust in me. I know I said I would leave you alone, but I just wanted to share my thoughts with you. It's hard to lose a friendship like yours. You have a lot of friends, I do not. You have been a very special person in my life.
>
> You don't have to respond. I am SO SORRY [D.R.] if I hurt you & disrespected you.
>
> [D.R.] Please contact me. Talk to me & tell me what's going through your mind. I cannot read your mind. If I hurt you on Sunday evening, we need to talk about it & try to resolve it, if possible. Give us a chance to talk about it. Do not leave me hanging out here wondering. Greg did that to you. And you know how that feels. You are doing that with me right now. I do not deserve that [D.R.] I do not want to lose your friendship over something that can be resolved. We have worked too hard together, spent a lot of good times together not to be able to resolve an issue.

{¶ 21} D.R. did not respond to the messages but later showed them to Det. Barna, who took pictures of them.

4

{¶ 22} D.R. eventually spoke with appellant on the phone. She asked him if he knew what he did to her the other night. She described to him the bruises left on her body and how the skin of her elbows was peeled off.

{¶ 23} After the phone call, appellant sent D.R. the following text message:

> [D.R.] We really need to talk. There is absolutely no way I could have put 20 bruises on you. If you had any bruises, it would have been on the inside of your thighs from my hands. And I know you did not have any scrapes on your elbows when I dropped you off.

{¶ 24} Appellant then asked D.R. if she went back outside after he dropped her off. He told her that he was really upset and said that he knew exactly what they had done on Saturday night. He maintained that he was coherent, or he would not have driven. Appellant then set forth his recollection of the events:

> We went over to Michelle's through her service door. You went pee in Michelle's downstairs bathroom & came out & laid on the floor. I lifted your shirt & removed your bra & sucked on your nipples. I kissed your body and started to remove your pants from your waist. You lifted your butt & you pulled your pants below your butt & I removed your pants.
>
> I went back up & sucked your nipples and fingered you for about 30 seconds. Then I got on top of you & we had sex for a few minutes. I came on your stomach. Then you went into the bathroom & pee'd again.
>
> You went to my truck while I locked up. You were obviously pissed at me for some reason because you did not talk to me on the way home. I dropped you off at your house & I watched you open the garage.
>
> I would never do anything to hurt you. I thought you were pissed at me because I figured that I took advantage of you by having sex with you because you were pretty drunk. I would of never had sex with you if I thought you were totally out of it. The only reason I went forward & had sex with you, was because you lifted your a[**] and you pulled your pants down below your butt. So, I figured you were willing.
>
> [D.R.], I honestly do not know what else you think happened.

{¶ 25} Appellant sent several additional texts asking D.R. to talk to him. D.R. eventually responded and told him to never contact her again.

{¶ 26} D.R.'s sexual assault evidence collection kit was processed, and a DNA sample was obtained from appellant. Appellant's DNA was found in the internal/external vaginal swabs, the perianal swabs, a dried stain on the abdomen, a dried stain on the inner thigh, and on the bilateral nipples.

5

*State v. Virostek*, 2022-Ohio-1397, ¶¶ 2-26, *appeal not allowed*, 2022-Ohio-2765.

### III. Relevant State Procedural History

#### A. Indictment, Trial, and Sentencing

A grand jury indicted Virostek on January 21, 2021 for one count of rape by force or threat of force in violation of Ohio Revised Code § 2907.02(A)(2); one count of rape where the ability to resist or consent was substantially impaired in violation of Ohio Revised Code § 2907.02(A)(1)(c); and one count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(1). (ECF No. 12-1 at Ex. 1). Petitioner entered not guilty pleas to all counts on March 2, 2021. (*Id.* at Ex. 2).

The case proceeded to trial on May 5, 2021. (ECF No. 12-2 at 5). On May 11, 2021, the jury found Virostek guilty on the count of rape where the ability to resist or consent was substantially impaired and not guilty on the remaining counts. (ECF No. 12-1 at Ex. 5). On June 8, 2021, the trial court sentenced Virostek to a minimum sentence of three years and a maximum sentence of four and a half years pursuant to the Regan Tokes Law. (*Id.* at Ex. 9).

#### B. Direct Appeal

Virostek, through counsel, filed a notice of appeal to the Eighth District Court of Appeals on June 17, 2021. (*Id.* at Ex. 10). Petitioner raised ten assignments of error on appeal:

> 1. APPELLANT'S RAPE CONVICTION MUST BE REVERSED AS THE STATE OF OHIO FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION.
>
> 2. BY PRESENTING EVIDENCE OF RAPE BY FORCE FOR A SINGLE ACT/CONDUCT THE STATE OF OHIO IMPLICITLY ESTABLISHED IT LACKED SUFFICIENT EVIDENCE ON THE CHARGE OF RAPE BY SUBSTANTIAL IMPAIRMENT WHERE THE TWO SEPARATE OFFENSES ARE IRRECONCILABLE AS COMMITTING ONE FORM OF THE OFFENSE PRECLUDES COMMITTING THE OTHER.

3. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHERE COUNSEL FAILED TO MOVE THE COURT TO SEVER OR OTHERWISE REQUIRE THE STATE TO ELECT WHICH OFFENSE WOULD BE SENT TO THE JURY RAPE BY FORCE OR SUBSTANTIAL IMPAIRMENT.

4. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL FAILED TO OBJECT TO IMPROPER JURY INSTRUCTIONS AND OTHERWISE SPECIFICALLY REQUESTED PREJUDICIAL NON-STANDARD JURY INSTRUCTIONS AND THE INSTRUCTIONS WERE OTHERWISE PLAIN ERROR.

5. APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

6. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL'S FAILED TO MOVE TO DISMISS FOR VIOLATION OF SPEEDY TRIAL.

7. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL PREJUDICIALLY MISSTATED IN CLOSING THAT IT WAS UNKNOWN IF D.R. CONSUMED ADDITIONAL ALCOHOL AFTER RETURNING HOME.

8. APPELLEE COMMITTED PROSECUTORIAL MISCONDUCT INCLUDING SHIFTING THE BURDEN OF PROOF WHICH PREJUDICED APPELLANT.

9. APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL DUE TO THE MULTIPLE ERRORS COMMITTED IN THE TRIAL COURT EVEN IF THE INDIVIDUAL ERRORS ARE FOUND TO BE HARMLESS UNDER THE DOCTRINE OF CUMULATIVE ERROR.

10. APPELLANT'S INDEFINITE SENTENCE IMPOSED UNDER THE REAGAN TOKES SENTENCING SCHEME VIOLATES APPELLANT RIGHTS UNDER THE UNITED STATES CONSTITUTION APPLIED TO THE STATE OF OHIO THROUGH THE FOURTEENTH AMENDMENT AND THE OHIO CONSTITUTION AS IT DENIES APPELLANT DUE PROCESS OF LAW; VIOLATES THE SIXTH AMENDMENT RIGHT TO A JURY TRIAL; VIOLATES THE SEPARATION OF POWERS DOCTRINE; DOES NOT PROVIDE FAIR WARNING OF THE DICTATES OF THE STATUTE TO ORDINARY CITIZENS; AND THE STATUTE CONFERRED TOO MUCH AUTHORITY TO THE OHIO DEPARTMENT OF REHABILITATION AND CORRECTION (ODRC). THE REAGAN TOKES SENTENCE MUST ALSO BE VACATED WHERE APPELLANT WAS NOT PROVIDED REQUIRED NOTICE UNDER R.C. 2929.19(B)(2)(C).

(*Id.* at Ex. 11). The State filed a response brief on December 20, 2021. (*Id.* at Ex. 12). Petitioner filed a reply on January 7, 2022. (*Id.* at Ex. 13). On April 28, 2022, the appellate court rejected Petitioner's assignments of error and affirmed his convictions and sentence. (*Id.* at Ex. 14).

    **C.**    **Appeal to the Supreme Court of Ohio**

On June 9, 2022, Virostek, through counsel, filed a notice of appeal to the Supreme Court of Ohio. (*Id.* at Ex. 15). In his memorandum in support of jurisdiction, Virostek raised four propositions of law:

> **Proposition of Law 1:** Voluntary intoxication is not a "mental or physical condition" for the purpose of substantial impairment rape under R.C. 2907.02(A)(1)(c).
>
> **Proposition of Law 2:** Ohio's definition of substantial impairment is unconstitutionally vague and interpreted differently on a case-by-case basis and what constitutes an individual substantially impaired by an intoxicant for rape under R.C. 2907.02(A)(1)(c) and other sex offenses based thereon must be specifically defined so Ohioans can determine the legality of their conduct prior to engaging therein.
>
> **Proposition of Law 3:** Where a single sexual act occurs involving an individual victim whose mental condition remains unchanged R.C. 2907.02(A)(1)(c) rape by substantial impairment and R.C. 2907.02(A)(2) rape by force cannot concurrently occur and evidence of a clear verbal refusal to engage in a sexual act and resistance by the victim precludes a conviction under R.C. 2907.02(A)(1)(c).
>
> **Proposition of Law 4:** Where the state of Ohio charges a defendant under both R.C. 2907.02(A)(1)(c) and R.C. 2907.02(A)(2) for a single sexual act involving an individual victim whose mental condition remains unchanged failure to sever for trial or otherwise a failure by the state of Ohio to elect which offense it will sent to the jury prejudices the defendant and denies the right to present a defense and a fair trial thus violating the defendant's constitutional rights.

(*Id.* at Ex. 16). The State waived filing a response. (*Id.* at Ex. 17). On August 16, 2022, the Supreme Court of Ohio declined to accept jurisdiction. (*Id.* at Ex. 18).

    **IV.**    **Federal Habeas Corpus Petition**

On December 2, 2022, Virostek filed a federal petition raising fourteen grounds for relief:

8

*Ground One:* Petitioner rape conviction must be reversed as the state of Ohio failed to present Sufficient evidence to support the conviction.

*Ground Two:* By presenting evidence of rape by force for a single act/conduct the state of Ohio implicitly established it lacked sufficient evidence on the charge of rape by substantial impairment where the two separate offenses are irreconcilable as committing one form of the offense precludes committing the other.

*Ground Three:* Petitioner is denied effective assistance of trial counsel in violation of the ***Sixth Amendment to the United States Constitution*** where counsel failed to move the court to sever or otherwise require the state to elect which offense would be sent to the jury – rape by force or substantial impairment.

*Ground Four:* Petitioner is denied effective assistance of trial counsel where counsel failed to object to improper jury instructions and otherwise specifically requested prejudicial non-standard jury instructions and the instructions were otherwise plain error.

*Ground Five:* Petitioner conviction is against the manifest weight of the evidence.

*Ground Six:* Petitioner is denied effective assistance of trial counsel where counsel failed to move to dismiss for violation of speedy trial.

*Ground Seven:* Petitioner is denied effective assistance of trial counsel where counsel prejudicially misstated in closing that it is unknown if consumed additional alcohol after returning home.

*Ground Eight:* Appellee committed prosecutorial misconduct including shifting the burden of proof which prejudiced petitioner.

*Ground Nine:* Petitioner is denied his constitutional right to a fair trial due to the multiple errors committed in the trial court even if the individual errors are found to be harmless under the doctrine of cumulative error.

*Ground Ten:* Petitioner indefinite sentence imposed under the Reagan Tokes sentencing scheme violates Petitioner rights under the United States Constitution applied to the State of Ohio through the ***Fourteenth Amendment*** and the ***Ohio Constitution*** as it denies petitioner due process of law; violates the ***Sixth Amendment*** right to a jury trial; violates the separation of powers doctrine; does not provide fair warning of the dictates of the statute to ordinary citizens; and the statute conferred too much authority to the Ohio Department of Rehabilitation and Correction (ODCR). The Reagan Tokes sentence must also be vacated where petitioner is not provided required notice under R.C. 2929.19(B)(2)(c).

*Ground Eleven:* Voluntary intoxication is not a mental or physical condition for the purpose of substantial impairment rape under RC. 2907.02(A)(1)(c).

*Ground Twelve:* Ohio's definition of substantial impairment is unconstitutionally vague and interpreted differently on a case by case basis and what constitutes an individual substantially impaired by an intoxicant for rape Under RC. 2907.02(A)(1)(c) and other sex offenses based thereon must be specifically defined so Ohioans can determine the legality of their conduct prior to engaging therein.

*Ground Thirteen:* Where a single sexual act occurs involving an individual victim whose mental condition remains unchanged R.C. 2907.02(A)(1)(c) rape by substantial impairment and R.C. 2907.02(A)(2) rape by force cannot concurrently occur and evidence of a clear verbal refusal to engage in a sexual act and resistance by the victim precludes a conviction under R.C. 2907.02(A)(1)(c).

*Ground Fourteen:* Where the state of Ohio charges a petitioner under both R.C. 2907.02(A)(1)(c) and R.C. 2907.02(A)(2) for a single sexual act involving an individual victim whose mental condition remains unchanged failure to server [sic] for trial or otherwise a failure by the state of Ohio to elect which offense it will send to the jury prejudices the petitioner and denies the right to present defense and a fair trial thus violating the petitioner constitutional rights.

(ECF No. 1-2 at PageID #:23-35).

On June 26, 2023, Respondent moved for leave to file a motion to dismiss rather than a return of writ. (ECF No. 12). The Court granted the motion and deemed the motion to dismiss filed as of July 5, 2023. (ECF No. 14). Virostek filed a "Motion for Leave to File Objection and Cause for Show to Withstand Respondent Motion to Dismiss and Traverse Instanter," which the Court considers as his response to the motion to dismiss. (ECF No. 16; *see* ECF No. 17). Respondent filed a reply in support of his motion. (ECF No. 18).

### V. Legal Standards

#### A. Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge their custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991). Thus, "errors in application of state law … are

10

usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions."). A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985)).

**B. Exhaustion**

"A federal habeas corpus court should not grant a habeas corpus application by a state prisoner unless he has exhausted all of his available state court remedies on his grounds for relief. 28 U.S.C. § 2254(b) and (c)." *Gordon v. Bradshaw*, No. 104 CV 2299, 2007 WL 496367, at *12 (N.D. Ohio Feb. 12, 2007). "A petitioner satisfies the exhaustion requirement once the state supreme court provides him with an opportunity to review his claims on the merits and the state supreme court has had a full and fair opportunity to rule on the claims." *Id.* (citing *Dickerson v. Mitchell*, 336 F.Supp.2d 770, 786 (N.D. Ohio 2004) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir.1994); *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990))). "If a remedy remains under state law that a federal habeas corpus petitioner has not yet pursued, exhaustion has not occurred and the federal habeas court cannot review the merits of the claim." *Id.* (citing *Rust*, 17 F.3d at 160). "When a petitioner has failed to exhaust his state remedies, and when he can no longer do so under state

law, his habeas claim is procedurally defaulted." *Adams v. Burton*, No. 16-1476, 2016 WL 6610219, at *2 (6th Cir. Nov. 8, 2016) (citing *O'Sullivan*, 526 U.S. at 848).

      **C.**      **Procedural Default**

Procedural default occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107, 125 n.28, 102 S. Ct. 1558, 1570, 71 L. Ed. 2d 783 (1982); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).

A petitioner procedurally defaults a claim by failing to "fairly present" the claim in state court when he does not pursue that claim through the state's "'ordinary appellate review procedures,'" and, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim. *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see also Baston v. Bagley*, 282 F. Supp. 2d 655, 661 (N.D. Ohio 2003) ("Issues not presented at each and every level [of the state courts] cannot be considered in a federal habeas corpus petition."). Under these circumstances, while the exhaustion requirement is technically satisfied because there are no longer any state-court remedies available to the petitioner, the petitioner's failure to have the federal claims fully considered in the state courts constitutes a procedural default of those claims, barring federal habeas review. *Williams*, 460 F.3d at 806 ("Where state court remedies are no longer available to a petitioner because he or she failed to use them within the required time period, procedural default and not exhaustion bars federal court review."); *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion

12

requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Furthermore, to "fairly present" a claim to a state court, a petitioner must assert both its legal and factual basis. *Williams*, 460 F.3d at 806 (citing *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)). Most importantly, a "'petitioner must present his claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law.'" *Id*. (quoting *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)). A petitioner can overcome a procedural default by demonstrating cause for the default and actual prejudice that resulted from the alleged violation of federal law, or that there will be a "fundamental miscarriage of justice" if the claim is not considered. *Coleman*, 501 U.S. at 750. "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot be fairly attributed to him." *Id*. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id*. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)); *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) ("The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995))).

## VI. Analysis

Respondent argues "there is nothing in Virostek's habeas petition that the Court can review (1) because of procedural default of habeas claims not presented to the Supreme Court of Ohio

and (2) because of a lack of cognizability of the remaining habeas grounds that are not procedurally defaulted." (ECF No. 11 at 1).

### A. Grounds One and Three through Ten – Procedurally Defaulted

Respondent asserts that Grounds One and Three through Nine are procedurally defaulted because they "go beyond the propositions of law submitted to the Supreme Court of Ohio." (ECF No. 12 at 15). To the extent Petitioner could assert ineffective assistance of appellate counsel as cause for the procedural default, Respondent argues such is insufficient because "there is no record allegation of ineffective assistance of appellate counsel that could constitute cause for the procedural default, and if Virostek were to present an Application under Ohio App. R. 26(B) to argue ineffective assistance of appellate counsel, such an Application would likely be untimely and would itself be procedurally defaulted." (*Id.* at 17). Respondent further argues that Petitioner cannot show actual prejudice as required to excuse the default. (*Id.* at 18-20).

Petitioner's Grounds One through Ten are the same as the assignments of error he raised to the state appeals court. (*Compare* ECF No. 1-2 at PageID #: 23-30 *with* ECF No. 12-1 at Ex. 11). Similarly, Petitioner's Grounds Eleven through Fourteen are the same as his propositions of law raised to the Supreme Court of Ohio. (*Compare* ECF No. 1-2 at PageID #: 31-34 *with* ECF No. 12-1 at Ex. 16). As Respondent seems to concede, there is sufficient overlap between Grounds Two and Thirteen. (*See* ECF No. 12 at 14). Thus, only the claims asserted in Grounds Two and Eleven through Fourteen were presented to the Supreme Court of Ohio such that, as Respondent argues, Grounds One and Three through Nine are procedurally defaulted because Petitioner has not fairly presented them at every level of the state courts.

Notably, Respondent does not argue that Ground Ten is procedurally defaulted but rather that it is not cognizable because it challenges the application or interpretation of Ohio law. (ECF

14

No. 12 at 14). Ground Ten challenges the constitutionality of the Reagan Tokes sentencing scheme such that it could be read as asserting a federal rather than state claim. (*See* ECF No. 1-2 at PageID #: 30). However, Virostek did not present this argument to the state supreme court. (*See* ECF No. 12-1 at Exhibit 16). Accordingly, the Court need not determine whether Ground Ten asserts a cognizable federal claim because such claim is procedurally defaulted. *See Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (stating that procedural default may be raised *sua sponte*, even if waived by the state).

Because these grounds are procedurally defaulted, the question becomes whether Petitioner can overcome the default. In his petition, Virostek asserts that any failure to exhaust is "because he is represented by the same attorney in both lower appeal court, and to the Ohio Supreme Court, and that fault shall be on the attorney." (ECF No. 1-2 at PageID #: 35). Respondent argues that "since there was never an application under Ohio App. R. 26(B) filed by Virostek this issue is not in the record." (ECF No. 18 at 7). While "[i]neffective assistance of counsel can constitute cause for a procedural default," "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). As Respondent argues, Petitioner has not raised the issue of his appellate counsel's ineffectiveness in the state courts such that it is also procedurally defaulted and cannot serve as cause to overcome the procedural default of the underlying claims. *Id.*

While less than clear, Petitioner also seems to assert that he is not required to show cause and prejudice to excuse his procedural default because his due process rights were violated given that "substantially impaired" is not defined under the relevant statute. (ECF No. 16 at 17). While it is true that "a petitioner may be able to overcome a procedural default that would otherwise bar habeas review if the petitioner can establish that failure to review his habeas claim will result in a

15

'fundamental miscarriage of justice,'" this exception "has been explicitly tied to a petitioner's ability to demonstrate actual innocence." *Stein v. Sheldon*, No. 3:20-CV-2722, 2024 WL 706991, at *3 (N.D. Ohio Feb. 21, 2024) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Schlup*, 513 U.S. at 321). "To succeed on a claim of actual innocence, a petitioner must offer new reliable evidence showing that a fundamentally unjust incarceration has occurred." *Id.* (internal quotation marks omitted). Petitioner has not offered any such "new reliable evidence" to show his factual innocence as required to meet this standard.

Accordingly, Petitioner has not shown that he can overcome the default and Grounds One and Three through Ten should be dismissed as procedurally defaulted.

### B.   Grounds Two and Eleven through Fourteen – Not Cognizable

Respondent asserts that Grounds Two and Eleven through Fourteen—the claims Petitioner has exhausted—are not cognizable on federal habeas review because they constitute "a challenge to the application of Ohio law in respect to how the case was charged." (ECF No. 14 at 21). Based on the "language of Virostek's propositions of law," Respondent argues that "[t]here is no allegation of insufficient evidence or manifest weight of evidence as before the Ohio Court of Appeals" and the "four propositions are purely of law and specifically—and only—Ohio law." (*Id.*).

Grounds Two and Thirteen address whether a single sexual act and evidence concerning that act could be used to prove both substantial impairment rape and rape by force. (ECF No. 1-2 at PageID #: 24, 33). Ground Eleven addresses whether voluntary intoxication is a mental or physical condition under Revised Code § 2907.02(A)(1)(c). (*Id.* at PageID #: 31). Ground Twelve asserts that Revised Code § 2907.02(A)(1)(c) is unconstitutionally vague. (*Id.* at PageID #: 32).

16

Ground Fourteen challenges the trial court's failure to sever the two rape counts for trial. (*Id.* at PageID #: 34).

As discussed above, Virostek raised each of these issues to the Ohio Supreme Court. However, in doing so, he relied on Ohio law rather than federal law and framed the issues as challenges under Ohio law. (*See* ECF No. 12-1 at Ex. 16). Accordingly, Virostek has not brought a federal claim and Grounds Two and Eleven through Fourteen are not cognizable and should be dismissed. *See Bates*, 934 F.2d at 101 (a petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all"); *Poston v. Settles*, No. 19-5665, 2019 WL 6907189, at *1 (6th Cir. Dec. 10, 2019) (finding that grounds petitioner raised in direct appeal as "only violations of state law" were "not cognizable on federal habeas") (*citing Estelle*, 502 U.S. at 71-72).

With respect to Ground Twelve, it is possible that Virostek's citation to two United States Supreme Court cases in support of a single sentence asserting that the statute at issue is unconstitutionally vague could be construed as raising a federal challenge in the state supreme court. (*See* ECF No. 12-1 at Ex. 16 at 3). However, construing Virostek's vagueness argument as a federal challenge does not save it because even if he asserted this federal claim to the state supreme court, he did not raise the vagueness issue to the lower appellate court. (*See id.* at Ex. 11). By failing to do so, Petitioner has now procedurally defaulted his vagueness claim. *See Eskridge v. Konteh*, 88 F. App'x 831, 837-38 (6th Cir. 2004) (finding § 2254 petitioner's claims procedurally barred when they were raised for the first time to the Supreme Court of Ohio).

**C.    Summary**

To summarize, Grounds One and Three through Ten are procedurally defaulted; Grounds Two and Eleven through Fourteen are not cognizable; and, to the extent Ground Twelve is cognizable, it is procedurally defaulted. Thus, I recommend that the Court deny Virostek's petition.

17

**VII.      Certificate of Appealability**

    **A.      Legal Standard**

A habeas petitioner may not appeal the denial of his application for a writ of habeas corpus unless a judge issues a certificate of appealability and specifies the issues that can be raised on appeal. 28 U.S.C. § 2253(c) ("A certificate of appealability may issue … only if the applicant has made a substantial showing of the denial of a constitutional right."). The "'petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The granting of a certificate of appealability does not require a showing that the appeal would succeed on any claim. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

    **B.      Analysis**

Petitioner's grounds for relief are procedurally defaulted or not cognizable. If the Court accepts the foregoing recommendation, then Petitioner has not made a substantial showing of a denial of a constitutional right. He would then not be entitled to a certificate of appealability. Thus, it is recommended that the Court not issue a certificate of appealability.

**VIII.   Recommendation**

Virostek's claims are non-cognizable or procedurally defaulted. Thus, it is recommended that the Court deny his petition in its entirety and not grant him a certificate of appealability.

DATED: March 12, 2024

                                                        *s/Carmen E. Henderson*
                                                        Carmen E. Henderson
                                                        United States Magistrate Judge

OBJECTIONS

       Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-31 (6th Cir. 2019).